IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


**UNITED STATES OF AMERICA,**

vs.

Case No. 4:02cr49-RH
Case No. 4:04cv312-RH/WCS

**JOHNNY WINBUSH,**

    Defendant.

_____/

## REPORT AND RECOMMENDATION TO DISMISS § 2255 MOTION

Defendant filed a motion to vacate sentence pursuant to 28 U.S.C. § 2255.  Doc. 29.  The court directed Defendant to show cause why the motion should not be dismissed as untimely.  Doc. 30.  Defendant filed an "Appendix in Support," doc. 33, which the court liberally construed as asserting entitlement to equitable tolling.  Doc. 33.  The Government was directed to respond, and Defendant given the opportunity to reply.  *Id.*

The Government filed a response asserting that the § 2255 motion should be dismissed as untimely.  Doc. 34.  Defendant then filed a response to the court order to show cause why his motion should not be dismissed.  Doc. 35.  He also filed a

document titled "Amend New Information to be Adding to Defendant 2255, In Supporting Motion to Withdraw Plea," docketed by the clerk as an affidavit.  Doc. 36.

There is a one year time limit for filing a § 2255 motion, which generally runs from "the date on which the judgment of conviction becomes final."  § 2255.  The period may also run from the date on which an impediment, created by unconstitutional government action, is removed, the date on which the asserted right was recognized by the Supreme Court and made retroactively applicable, or the date on which the facts in support could have been discovered by due diligence.  § 2255.

Defendant's judgment was entered on the docket on May 1, 2003.  Doc. 28.[1] Defendant did not appeal, so his conviction became final on May 15, 2003.  *See* Fed.R.App.P. 4(b)(1)(A)(I) and 4(b)(6) (notice of appeal must be filed within 10 days after the judgment is entered on the criminal docket); Fed.R.App.P. 26(a) (computation of time).  Defendant's § 2255 motion was filed over one year later, on July 29, 2004 (the date of mailing).

"[E]quitable tolling is available only if a petitioner establishes *both* extraordinary circumstances and due diligence."  Diaz v. Secretary for Dept. of Corrections, 362 F.3d 698, 702 (11th Cir. 2004) (citation omitted, emphasis in original).  *See* Doc 30, p. 2, n. 2. Indeed, "[b]ecause of the difficult burden, this Court has rejected most claims for equitable tolling."  *Id.* at 701 (collecting cases).  Defendant has the burden of proof.

---

[1] There is a notation by the clerk on the judgment itself that it was entered on April 30, 2003, but the docket reflects the entry of judgment *on the docket* the following day.  *See* Fed.R.App.P. 4(b)(1)(A) (defendant's notice of appeal must be filed within 10 days of entry of judgment) and 4(b)(6) ("[a] judgment is entered for purposes of this Rule 4(b) when it is entered on the criminal docket.").

Case Nos. 4:02cr49-RH and 4:04cv312-RH/WCS

<u>Arce v. Garcia</u>, 400 F.3d 1340, 1347 (11th Cir. 2005) (this is "because equitable tolling is an exception to the rule of the statute of limitations, not the rule itself.").

Attached to the appendix in support, Defendant submitted copies of two letters addressed to "Dear Judge."  Doc. 32, Exs. A and B.[2]  The institution used a stamp, "PROVIDED TO MAYO C.I. ON," with blank spaces for the date and initials.  The stamp appears on both letters attached to doc. 32, filled in with the dates of May 18 and July 18 of 2003, respectively.  No other dates appear on either letter.  The dates handwritten in the space provided on the stamps appear to have been corrected or altered by using "white out."  The letters do not include the name of this court, the case name, or the case number.  They begin with "Dear Judge" but do not specify a particular judge.  The first does not even bear Defendant's name or signature, though the second one does have Defendant's name written at the bottom.  Both letters assert that the writer wants to appeal and told his lawyer, but had not received an answer from the lawyer.

In Ex. C, Bobby Miller states that he "filed this motion" (presumably the § 2255 motion) for Defendant.  Doc. 32, Ex. C (dated August 20, 2004).

> Mr. Winbush had me to write the Judge and asked him will he appeal his case, Mr. Winbush Federal cases, but no anwer.  So I wrote anther letter to the Judg, no "anwer," so I went back to court for about 5 months or so, I saw Mr. Winbush, I asked him have he heard from his appeal, Winbush, was not in the right sound of mind.  I went back to court and upon returning in July, 2004, I saw Mr. Winbush, I was concerned about him so at that time, I filed the 2255 motion in July, 2004, for Mr. Winbush, because of his mental condition, counsel took him for a "goat."

<u>Id.</u>

---

[2] There is an "index" attached to doc. 32, listing A, A, B, C, D, and E.  Doc. 32, p. 2.  There are only three exhibits: A (one exhibit), B (one exhibit), and C and E (one exhibit).  The court references the latter as Ex. C.

Case Nos. 4:02cr49-RH and 4:04cv312-RH/WCS

In response to the order to show cause, Defendant asserts that he told counsel to file an appeal and wrote letters to counsel, but received no response. Doc. 35, pp. 1-2, 5. Defendant also states that he "thought that counsel had appeal his case until the defendant met an inmate." *Id.*, p. 5. Assuming this is a reference to meeting Miller, Defendant does not allege when it happened. Miller says he wrote to the court for Defendant but did not receive an answer, then five months later asked Defendant whether he had heard anything but Defendant was not in the right frame of mind and his response (if any) to Miller is not provided. Miller wrote the letters in May and July of 2003, so another conversation five months later would have been between October and December of 2003. Certainly, by that time Defendant realized that no appeal was pending.

There are also exhibits to doc. 36, which is in the nature of a motion to amend or supplement the § 2255 motion rather than a response regarding timeliness or equitable tolling.[3] The court considers the exhibits as may be relevant to tolling.

Defendant submitted an evaluation dated February 14, 2003, by Patrick Ward, Ph.D. Doc. 36, Ex. 1. It is not a clean photocopy. Ward noted that Defendant maintained eye contact, but responded that his date of birth was "1743," and also said the current date was "1743." Defendant said he was taking "little pills," and consistently

---

[3] Defendant alleges that the plea agreement was contrary to the law and evidence, that counsel knew it and knew the police beat a confession out of him, and knew Defendant was in a mental hospital during the crime. Doc. 36, pp. 1-2. He asserts that he told counsel he was in a "special class" in school and was "now receiving SSI." *Id.*, p. 2. He alleges that he was examined by Dr. Ward and found incompetent on February 14, 2003, but counsel failed to investigate. *Id.*, p. 2. He asserts that his plea was not knowing and voluntary due to counsel's misadvice and omissions, and Defendant's mental illness and retardation. *Id.*, pp. 3-4. Some of these claims are discussed ahead, with respect to the exhibits.

Case Nos. 4:02cr49-RH and 4:04cv312-RH/WCS

responded in a monosyllabic fashion.  Ward thought these actions were incongruous with previous communications.  He noted "copious evidence" of Defendant's written communications with the court, in which Defendant "identified the correct date and was able to communicate in a goal directed and cogent fashion.  There was also collateral information that the client had instructed or requested that his attorney obtain a plea bargain for his consideration."  *Id.*  "Given this background information, the evaluator believes that the client was malingering, symptoms of a psychotic disorder during the time of the evaluation."

> The paragraph which follows provides:
>
> In the evaluator's opinion, the clien  is  In  competent to proceed, having <u>not</u> a rational and factual understanding of the current charges, of possible penalties, of the roles and functions of members and officers of the court, of procedures used in the determination of guilt and innocence.  The client's communication provides ample evidence of these abilities.  The communication also provides evidence of the client's <u>in</u>abilities to assist his attorney in his defense, albeit in a somewhat clumsy, uninformed, and naive manner.

*Id.* (errors in original, emphasis added).

The original of this document should be examined by the District Judge to see the rather obvious alterations that have been placed on it.  The letters underlined in the quoted passage are in type which is raised slightly above other letters in the text.  The combination of the extra spacing, inappropriate capitalization (Incompetent), and insertions not on the same line, (not a rational and factual understanding . . .; inabilities) evidences insertions of negatives which were probably not in the original.  Without the negatives, this paragraph is consistent with the findings of the first paragraph.  With them, the paragraph is a puzzling non sequitur.

Case Nos. 4:02cr49-RH and 4:04cv312-RH/WCS

The upper portion of the document (indicating that it was a clinical interview with Defendant, by Patrick Ward, on February 14, 2003) also has typed letters which do not appear even or consistent.  On the bottom left corner something has been crossed out; close inspection reveals typewritten letters in a small font spelling "Bobby W. Miller 2 of 3."  A telephone number is handwritten above this.  Bobby Miller is the inmate whose affidavit is document 32, Ex. C and E.

Aside from these facial irregularities, the evaluation is suspect in the context of this case.  Defendant's assertion that the evaluation in February of 2003 preceded the crimes (doc. 36, p. 2) is incorrect.  *See* Doc. 1 (indictment, charging offenses committed on or before March 5, 2002).  Defendant has been in continuous custody since March 9, 2002.  PSR, ¶ 67.  Defendant entered his guilty plea in December of 2002, and sentencing (originally scheduled for February 28, 2003), was continued at the request of Defendant *in the hope of earning a substantial assistance motion from the Government*.  Docs. 21-23.  That this Defendant would be evaluated for competency in February of 2003 is inconsistent with the proceedings in this case.

The purported evaluation is also contradicted by the PSR.  When interviewed for his PSR, Defendant reported that he was not currently under the care of a physician, was not taking prescription medications, and had no history of mental or emotional problems or treatment for such problems.  ¶ ¶ 61-62.  The report was initially prepared on January 22, 2003.  PSR, p. 2.  The addendum, prepared in response to defense counsel's objections received on February 13, 2003, does not contain any mention of evaluation or treatment for any such problems.  PSR, ¶ ¶ 93-98.

The second exhibit is an affidavit dated July 20, 2004. Doc. 36, Ex. 2. It is also a photocopy. The content is as follows:

> I called by phone, to Winbush Attorney and asked him is he gone to appeal Winbush case, 30 years is to much to plead out to when, he did not do it. Enclosing a copy of Dr. Ward's report to you Winbush. I had problem getting it, because they told me you had to leases [4] it to me like you did. I'm still your power attorney. I hope this help you on your appeal. I'm a nurse now, and I will still be over your SSI check when you get out. When I talked to your lawyer he told me he had already; had an appeal in. I'm praying for the true to come out. Everything; I say is true.

*Id.* (errors in original). The first name is not clear (and may be spelled differently at the top and bottom of the page), the last name is Cuthbertson. Defendant refers to "Ms. Cuthberson." Doc. 36, p. 3.

Like the evaluation, this affidavit is questionable for a number of reasons.[5] But even if acceptable as an affidavit, it fails to demonstrate anything of relevance. Cuthbertson does not say when she talked to Defendant's attorney, or mention any communication with Defendant between the time he could have appealed and the filing of his § 2255 motion. Defendant himself does not allege that his attorney told him he

---

[4] This is the court's best guess of the word as written, though it does not make sense in the context.

[5] The affiant's name and signature were written over in ink several times. It seems odd that someone trained as a nurse would write or sign the document, given the spelling and grammatical errors. The person tells Defendant she "will still be over your SSI check when you get out," the "still" implying that she was previously or is currently "over" his Social Security checks. The PSR does not reflect that Defendant was receiving Social Security Income. PSR, ¶¶ 66-79 (employment history, earnings information for the years 1997-2001, and financial condition). Defendant has been in custody since March 9, 2002. PSR, ¶ 67. When interviewed for the PSR Defendant said he had no current source of income. PSR, ¶ 76. A prisoner should not be receiving any social security benefits.

Case Nos. 4:02cr49-RH and 4:04cv312-RH/WCS

would file a notice of appeal, only that he thought counsel had appealed "until the defendant met an inmate."

Liberally accepting Defendant's exhibits at face value, he has shown that he was deemed incompetent in February of 2003. Miller wrote letters to the court in May and June of 2003. Perhaps between October and December of 2003, Miller saw Defendant again and asked him about the appeal, but thought Defendant "was not in the right sound of mind." Miller saw him again in July of 2004, and filed the § 2255 motion for Defendant out of concern.

Defendant has not shown extraordinary circumstances or due diligence. Indeed, Defendant has not shown that anything – extraordinary or not – prevented him from timely filing a § 2255 motion on or before May 17, 2004.[6] It seems far more likely that the present § 2255 motion was filed in July of 2004 because that was when Miller saw Defendant again and helped him prepare it. This is not an extraordinary circumstance, and it certainly does not show due diligence by Defendant.

It is therefore respectfully **RECOMMENDED** that Defendant's motion to vacate (doc. 29) be **DISMISSED** as untimely.

**IN CHAMBERS** at Tallahassee, Florida, on August 16, 2005.

                                                      s/ William C. Sherrill, Jr.
                                                      **WILLIAM C. SHERRILL, JR.**
                                                      **UNITED STATES MAGISTRATE JUDGE**

---

[6] Even if another day should be added to the one year period due to leap year, May 15, 2004, was a Saturday.

Case Nos. 4:02cr49-RH and 4:04cv312-RH/WCS

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**